**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| HAROLD HARDEN,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTINE MONINGOFF and RAFAEL AGUILERA, [1]<br><br>    Defendants. | Case No. 2:14-cv-00377-APG-PAL<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING VARIOUS MOTIONS**<br><br>(ECF Nos. 103, 127, 132, 149, 150, 156, 158, 159, 160, 163) |

Plaintiff Harold Harden, a prisoner, filed this lawsuit alleging that in April 2012, defendant Christine Moninghoff moved Harden to the mental health segregation unit at High Desert State Prison ("HDSP") without prior notice and without his consent. ECF No. 17 at 4. He alleges that once there, he was forced to take psychiatric drugs that resulted in an allergic reaction. *Id.* He also alleges that defendant Rafael Aguilera transported him to the mental health segregation unit against his will and without any notice or opportunity to be heard. *Id.* His sole claim is a due process violation against defendants Moninghoff and Aguilera. The parties have filed numerous motions.

**I. Defendants' Motion for Summary Judgment (ECF No. 103)**

Defendants Moninghoff and Aguilera move for summary judgment, arguing that although an inmate like Harden has a due process right to not be involuntarily medicated, Harden has no due process right to be housed in any particular facility nor does he have a right to any particular classification within the facility. They thus contend that moving Harden to the Extended Care Unit ("ECU"), where they assert Harden voluntarily took medication, did not violate Harden's due process rights. Alternatively, Moninghoff argues that she was not the person who authorized

---

[1] Incorrectly identified in the complaint as Dr. Monninghoff and S/O Agular.

Harden's transfer to the ECU or his alleged forcible medication, so she did not personally participate in any violation even if there was one. Finally, Moninghoff and Aguilera argue they are entitled to qualified immunity because no reasonable official would understand that moving Harden to the ECU would violate a clearly established constitutional right.

Harden contends the defendants' motion is untimely. He also contends that he should be permitted to add Dr. Grant Lee as a defendant if Dr. Lee signed the transfer order. Harden filed a second opposition in which he argues that he did not receive an evaluation or a hearing before he was forced to move to the ECU under threat of physical force, and he contends that once there, he was made to take drugs that triggered an allergic reaction.

The Nevada Department of Corrections ("NDOC") has promulgated administrative regulations ("AR") that govern inmate classification within its facilities. AR 614 governs inmate classification based on health. ECF No. 103-1 at 2. AR 614's purpose "is to appropriately identify or determine the medical, mental health and dental needs and functional limitations, if any, of all inmates under [NDOC's] supervision and to assign those inmates to appropriate placement based on those needs." *Id.* Each inmate is given a medical and mental health evaluation upon entering an NDOC facility, and an inmate may be reclassified "upon evaluation [if] it is determined that a change in health classification level or functional limitation restriction is indicated." *Id.*

The housing units in NDOC facilities provide different levels of care to inmates with mental health issues. The Mental Health Unit ("MHU") "provides inpatient, acute mental health care to inmates." ECF No. 103-2 at 4. An inmate may be involuntarily admitted to the MHU if a physician, physician assistant, or advanced practitioner of nursing approves it where "the inmate appears to represent a danger to himself/herself or others." ECF No. 103-3 at 2. If the inmate does not agree to be moved to the MHU, then he must be given notice and a hearing before the Interdisciplinary Classification Committee within five days after involuntary admission to the MHU. *Id.* at 3.

In contrast, the ECU provides "intermediate, transitional, or chronic level of mental health services to inmates who do not require inpatient care, but need more care and supervision than that provided for general population inmates." *Id.* at 6. Inmates in the ECU "have access to services and activities available to general population inmates." *Id.* at 7. To be admitted to the ECU, the inmate receives a psychological evaluation and, if admission to the ECU is deemed necessary, "a psychiatric or medical nurse must estimate the degree of urgency entailed, [and] then the nurse must obtain a physician's order from the ECU psychiatrist and complete necessary documentation in the inmate's medical file." ECF No. 103-4 at 3. Additionally, the inmate must sign a voluntary admission consent form. *Id.*

Harden was evaluated upon entry into NDOC and reported a history of schizophrenia, bipolar disorder, depression, paranoia, and anxiety. ECF No. 107-1 at 2-3. On April 9, 10, and 11, 2012, Harden was observed acting erratically in his cell. ECF Nos. 103-8 at 2; 103-9 at 2; 103-10 at 2. Among other things, Harden did "not go out for yard and only occasionally goes out for showers." ECF No. 107-4 at 2. Additionally, papers were strewn about his cell on April 11. *Id.* Based on his behavior and at the request of prison staff, Moninghoff (who then was employed as a Psychologist 2 at the prison) went to Harden's cell and asked to speak with him. *Id.*; ECF No. 110-1 at 2. Harden declined to speak with Moninghoff so she was unable to complete a formal assessment of him ECF No. 110-1 at 2-3.

Moninghoff denies she was responsible for admitting Harden to the ECU or for placing him on medication. *Id.* at 3. According to Moninghoff, "as a Psychologist 2, it would be outside the scope of [her] practice to admit an inmate to the Mental Health Unit, the Extended Care Unit, or any other mental health environment." *Id.* She also states it would be outside the scope of her practice to prescribe Harden any psychiatric medication. *Id.* According to Moninghoff, it was Dr. Grant Lee, HDSP's psychiatrist at that time, who admitted Harden to the ECU. *Id.*; *see also* ECF No. 103-16 at 2 (case note printout report stating Harden was admitted to the ECU "per Dr. Lee").

1   A mental health classification form dated April 12, 2012 recommends assigning Harden to
2   the ECU. ECF No. 107-5 at 2.  The signature is illegible but the person who signed the document
3   identifies himself or herself as a psychiatrist.[2] *Id.*  Notes in Harden's medical chart indicate that
4   he was admitted to the ECU on April 12 and given Depakote and Prolixin. ECF No. 107-6 at 2.
5   The chart is signed by the same person who signed the mental health classification form. *Id.*
6   According to progress notes, Harden at first admitted he needed medication but later denied that
7   he needed any. ECF No. 107-7 at 2.  However, one of his doctors indicated that he had improved
8   after using Prolixin. *Id.*  In early May 2012, NDOC developed a mental health treatment plan for
9   Harden, which Harden signed. ECF No. 107-8.

10  According to a September 2012 Parole Board Report, which is not signed by Harden,
11  Harden "takes his psychotropic medication voluntarily and denies ever being on forced meds."
12  ECF No. 107-9 at 2.  However, in his verified complaint, Harden states under oath that he "was
13  made to take []drugs that resulted in a significant allergic reaction. . . ." ECF No. 17 at 4, 8.

14  According to defendant Rafael Aguilera, he escorted Harden to the ECU because he "was
15  responsible for ensuring all moves were completed per the Bed Movement Sheet." ECF No. 103-
16  19 at 3.  The Bed Movement Sheet is prepared by the Bed Movement Coordinator, who works
17  with the Shift Supervisor and the medical staff to determine inmate moves. *Id.*  The Shift
18  Supervisor then gives the Bed Movement Sheet to the Lead Search and Escort, who, on the day in
19  question, was Aguilera. *Id.*

20  A. *Timeliness*

21  Harden argues the defendants' motion should be denied as untimely.  Pursuant to the
22  Scheduling Order, dispositive motions were due November 11, 2015. ECF No. 79 at 2.  The
23  defendants moved to extend the deadline to file summary judgment motions to December 14,
24  2015. ECF No. 98.  I granted that motion. ECF No. 99.  The defendants timely filed their motion
25  on December 14, 2015. ECF No. 103.  I therefore will not deny the defendants' motion as

---

[2] A similar, more legible signature appears on an August 11, 2010 record, which appears to be signed by Dr. Lee. ECF No. 107-2 at 2.

1 untimely. Because Harden contends he never received a copy of the motion to extend the
2 deadline or my order granting it, I will direct the clerk of court to provide Harden with a copy of
3 both documents.

   *B. Add Parties*

4
5 In his opposition, Harden argues the defendants' motion should be denied because he
6 should be permitted to add Dr. Lee as a defendant. I will address Harden's motion to add Dr. Lee
7 below.

   *C. Moninghoff*

8
9 "Section 1983 provides a tort remedy against '[e]very person who, under color of [state
10 law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of
11 any rights, privileges, or immunities secured by the Constitution and laws." *Lacey v. Maricopa*
12 *Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (quoting 42 U.S.C. § 1983). "A person 'subjects'
13 another to the deprivation of a constitutional right, within the meaning of section 1983, if he does
14 an affirmative act, participates in another's affirmative acts, or omits to perform an act which he
15 is legally required to do that causes the deprivation of which complaint is made." *Id.* At 915
16 (quotation omitted). "The requisite causal connection can be established not only by some kind
17 of direct personal participation in the deprivation, but also by setting in motion a series of acts by
18 others which the actor knows or reasonably should know would cause others to inflict the
19 constitutional injury." *Id.* (quotation omitted).

20 Moninghoff denies under oath that she directed that Harden be transferred to the ECU and
21 that she placed him on any psychiatric medication. Harden has not presented any evidence in
22 response raising a genuine dispute that Moninghoff ordered he be sent to the ECU. Harden
23 argues that Moninghoff came to see him and the next day he was transferred, but that does not
24 raise a genuine issue of fact that Moninghoff ordered him transferred. Additionally, Harden does
25 not identify any particular individual who forcibly medicated him, much less identify Moninghoff
26 as that person. I therefore grant Moninghoff's summary judgment motion.
27 / / / /
28

*D. Aguilera*

Aguilera argues he is entitled to qualified immunity. Harden does not respond to this argument other than to argue that Aguilera made Harden move to the ECU under threat of force.

To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling on a qualified immunity defense, I engage in a two-part inquiry, which I may address in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, I consider whether the facts viewed in the light most favorable to the plaintiff show the defendant's conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). Second, if the plaintiff has shown the defendant violated a constitutional right, I must determine whether that right was clearly established. *Id.*

Here, I address the second part of the qualified immunity analysis first because even if Aguilera violated Harden's constitutional right, Harden has not shown his right was clearly established in the situation confronting Aguilera. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. *Wilkins*, 350 F.3d at 955.

The plaintiff bears the burden of showing that the right at issue was clearly established. *Sorrels*, 290 F.3d at 969. But a plaintiff need not establish that a court previously declared the defendant's behavior unconstitutional if it would be clear from prior precedent that the conduct was unlawful. *Blueford v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997). Additionally, a plaintiff

may meet his burden on the clearly established prong by showing the defendant's conduct was "such a far cry from what any reasonable . . . official could have believed was legal that the defendants knew or should have known they were breaking the law." *Sorrels*, 290 F.3d at 971.

Here, there is no evidence Aguilera participated in the decision to move Harden to the ECU. Rather, Aguilera received direction from other prison personnel that Harden would be moved to the ECU and Aguilera escorted Harden there. Harden has not pointed to any case law showing that at the time Aguilera acted it would have been clear to a correctional officer in Aguilera's position that he would violate Harden's constitutional rights by escorting Harden to the ECU based on a transfer order prepared by other prison staff and prison medical personnel. There is no allegation or evidence that Aguilera actually used any force on Harden, much less that he used unconstitutionally excessive force. Additionally, Harden has presented no evidence that Aguilera played any role in forcibly medicating him. Harden therefore has not met his burden of establishing Aguilera violated a clearly established right. Accordingly, I grant Aguilera's motion for summary judgment.

**II. Motions for Rule 25(c) Transfer and to Show Deceptive Filings (ECF Nos. 127, 132)**

Harden moves to add as defendants Dr. Grant Lee and Nurse Jane Hansen. Harden also argues that the defendants' prior filings, in which they asserted Dr. Lee authorized the transfer to the ECU, were deceptive because the form is actually signed by Nurse Hansen. The defendants respond that this court already denied Harden's motion to amend to add Dr. Lee as a defendant, and they argue the motion to add two new parties is untimely.

Harden's motion to add Dr. Lee and Nurse Hansen is a rehash of his prior motion to amend his complaint. *See* ECF No. 101. Magistrate Judge Leen denied that motion because it was untimely and because Harden did not submit a proposed amended complaint. ECF No. 124 at 5. Repackaging the motion as one to transfer an interest under Federal Rule of Civil Procedure 25(c) does not alter this analysis. The Scheduling Order set a September 14, 2015 deadline to amend the pleadings. ECF No. 79 at 1. Harden's motion, filed in February 2016, is untimely and Harden does not explain why he waited for months after the amendment deadline expired to move

1  to add these parties.  He also has not attached a proposed amended complaint.  I therefore deny
2  this motion.

3        As for Harden's argument that Nurse Hansen is the person who signed the documents, he
4  presents only the documents themselves as evidence.  *See* ECF No. 132.  The signatures are
5  illegible and are not clearly the signature of someone named Jane Hansen.  A similar, more
6  legible signature appears on an August 11, 2010 record, which appears to be signed by Dr. Lee.
7  ECF No. 107-2 at 2 *see also* ECF No. 103-16 at 2 (case note printout report stating Harden was
8  admitted to the ECU "per Dr. Lee").  The form is signed by someone who identifies himself or
9  herself as a "psychiatrist," which is consistent with Dr. Lee signing the document not Nurse
10 Hansen.  *See* ECF Nos. 132 at 5; ECF No. 110-1 at 3 (identifying Dr. Lee as the HDSP
11 psychiatrist at the time).  Nothing in any other record before me suggests Nurse Hansen signed
12 the documents.  I thus have no evidentiary basis to conclude the defendants' filings identifying
13 Dr. Lee as the signatory are false or deceptive.  Accordingly, I deny this motion.

14 **III.  Motion to Reconsider Order Regarding Alleged Settlement (ECF No. 149)**

15       Harden moves for reconsideration of my prior order finding there was no evidence that
16 this case was settled.  *See* ECF No. 147.  The defendants respond that this issue has been
17 addressed repeatedly by the court and this motion is a rehash of prior arguments.  The defendants
18 ask the court to admonish Harden to cease filing multiple motions on this same topic.  They also
19 request I relieve them from having to respond to future motions on the alleged settlement.

20       I have previously addressed Harden's arguments regarding the purported settlement of this
21 case. ECF Nos. 65, 147.  He still has presented no evidence of a settlement or its terms.  I deny
22 his motion.

23       I do not expect any further motions on this topic because the case is concluded based on
24 my ruling on the defendants' summary judgment motion.  However, because Harden has
25 repeatedly raised this same issue, I will grant the defendants' motion that they need not respond to
26 motions regarding this issue again in this court unless specifically ordered by the court to do so.
27 However, if Harden appeals, the defendants will have to address the issue on appeal.
28

### IV. Motions Regarding Settlement and for Leave to File Affidavit (ECF Nos. 150, 159)

Harden filed a motion advising the court that this matter might resolve during a mediation in another case. Harden later filed a motion for leave to file an affidavit in which he avers that he never signed anything that agreed to settle this case. The defendants agree this case has not settled. These two motions are therefore denied as moot.

### V. Motions to Reconsider Order Regarding Injunctive Relief (ECF Nos. 156, 158, 160, 163)

Harden has filed four separate motions seeking reconsideration of my order denying his motion for injunctive relief. ECF No. 155. Because I grant the defendants' summary judgment motion, I deny these motions as moot.

### VI. Conclusion

IT IS THEREFORE ORDERED that defendants Christine Moninghoff and Rafael Aguilera's motion for summary judgment **(ECF No. 103) is GRANTED.** The clerk of court shall enter judgment in favor of defendants Christine Moninghoff and Rafael Aguilera and against plaintiff Harold Harden.

IT IS FURTHER ORDERED that the clerk of court shall provide plaintiff Harold Harden with a copy of the defendants' motion to extend time (ECF No. 98) and my minute order granting that motion (ECF No. 99).

IT IS FURTHER ORDERED that plaintiff Harold Harden's motion for Rule 25(c) Transfer of Interest **(ECF No. 127) is DENIED**.

IT IS FURTHER ORDERED that plaintiff Harold Harden's motion to show deceptive filings **(ECF No. 132) is DENIED**.

IT IS FURTHER ORDERED that plaintiff Harold Harden's motion for reconsideration **(ECF No. 149) is DENIED**.

IT IS FURTHER ORDERED that plaintiff Harold Harden's motion of case possibly being settled **(ECF No. 150) is DENIED as moot**.

IT IS FURTHER ORDERED that plaintiff Harold Harden's motions for reconsideration **(ECF Nos. 156, 158, 160, 163) are DENIED as moot**.

IT IS FURTHER ORDERED that plaintiff Harold Harden's motion for leave to file affidavit **(ECF No. 159) is DENIED as moot**.

DATED this 9th day of September, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE